UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

|  |  |
|---|---|
| CORNELIA HEUN-DAVIDSON, | ) No. ED CV 16-1569-PLA |
| Plaintiff, | ) **MEMORANDUM OPINION AND ORDER** |
| v. | ) |
| NANCY BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) |
| Defendant. | ) |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on July 18, 2016, seeking review of the Commissioner's[1] denial of her application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before a Magistrate Judge on August 10, 2016, and August 26, 2016. Pursuant to the Court's Order, the parties filed a Joint Submission (alternatively "JS") on September 21, 2017, that addresses their positions concerning the disputed issues in the case. The Court has taken the

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy Berryhill, the current Acting Commissioner of Social Security, is hereby substituted as the defendant herein.

Joint Submission under submission without oral argument.

## II.

## **BACKGROUND**

Plaintiff was born on April 14, 1972. [Administrative Record ("AR") at 152.] She has past relevant work experience as an accounting technician. [AR at 30, 56.]

On November 8, 2012, plaintiff filed an application for a period of disability and DIB, alleging that she has been unable to work since July 18, 2012. [AR at 20; see also AR at 152-53.] After her application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 20, 105-06.] A hearing was held on October 31, 2014, at which time plaintiff appeared represented by an attorney, and testified on her own behalf. [AR at 36-62.] A vocational expert ("VE") also testified. [AR at 56-58.] On December 4, 2014, the ALJ issued a decision concluding that plaintiff was not under a disability from July 18, 2012, the alleged onset date, through December 4, 2014, the date of the decision. [AR at 20-31.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 15-16.] When the Appeals Council denied plaintiff's request for review on May 19, 2016 [AR at 1-6], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation

and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the

claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since July 18, 2012, the alleged onset date.[2] [AR at 22.] At step two, the ALJ concluded that plaintiff has the following severe impairments:

> [M]ild lumbar spine degenerative disc disease with spondylosis at L5-S1, mild scoliosis, and mild right L4-5 radiculopathy; history of tremor; cervical spine strain and sprain; history of coccyx fractures; possible epilepsy/seizures disorder; headache; hypertension; history of asthma; and left elbow deformity.

[Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination

---

[2]   The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2016. [AR at 22.]

4

of impairments that meets or medically equals any of the impairments in the Listing. [AR at 24.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b),[4] as follows:

> [C]an lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently; [she] can stand and/or walk six hours out of an eight-hour workday; [she] can sit for six hours out of an eight-hour workday; [she] can perform postural activities, such as climbing, balancing, stooping, kneeling, crouching, and crawling, on a frequent basis, but [she] is limited to occasional climbing of ladders, ropes, or scaffolds; [she] must avoid concentrated exposure to extreme heat, wetness, humidity, and irritants, such as fumes, odors, dusts, and gases; [she] must avoid even moderate exposure to hazards such as machinery and heights; and [she] cannot drive as a job or work near open bodies of water.

[Id.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is able to perform her past relevant work as an accounting technician, as actually and generally performed. [AR at 30, 56-57.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of July 18, 2012, through December 4, 2014, the date of the decision. [AR at 31.]

**V.**

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when he: (1) rejected the opinions of plaintiff's treating orthopedist, Khalid Ahmed, M.D.; and (2) rejected the opinions of Agreed Medical Examiner Alexander Angerman, M.D. [JS at 4.] As set forth below, the Court agrees with plaintiff and

---

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

remands for further proceedings.

**A.   LEGAL STANDARD FOR MEDICAL OPINIONS**

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527. The Ninth Circuit has recently reaffirmed that "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record.'" Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). Thus, "[a]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citing Ryan, 528 F.3d at 1198); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan, 528 F.3d at 1198.

An ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons. Trevizo, 871 F.3d at 675 (citing Ryan, 528 F.3d at 1198); Revels v. Berryhill, __ F.3d __, 2017 WL 4819137, at *3 (9th Cir. Oct. 26, 2017). Where such an opinion is contradicted, however, it may only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. Trevizo, 871 F.3d at 675 (citing Ryan, 528 F.3d at 1198); Revels, 2017 WL 4819137, at *3; Ghanim v. Colvin, 763 F.3d 1154, 1160-61 (9th Cir. 2014); Garrison, 759 F.3d at 1012. When a treating physician's opinion is not controlling, the ALJ should weigh it according to factors such as the nature, extent, and length of the physician-patient working relationship, the frequency of examinations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. Trevizo, 871 F.3d at 676; see 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and

conflicting clinical evidence, stating his interpretation thereof, and making findings." Trevizo, 871 F.3d at 675 (citations and internal quotation marks omitted); Revels, 2017 WL 4819137, at *3. The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct." Reddick, 157 F.3d at 725.

Although the opinion of a non-examining physician "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician," Lester, 81 F.3d at 831, state agency physicians are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); Soc. Sec. Ruling 96-6p; Bray v. Astrue, 554 F.3d 1219, 1221, 1227 (9th Cir. 2009) (the ALJ properly relied "in large part on the DDS physician's assessment" in determining the claimant's RFC and in rejecting the treating doctor's testimony regarding the claimant's functional limitations). Reports of non-examining medical experts "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

**B.   DR. AHMED**

On November 16, 2012, Dr. Ahmed, an orthopedic surgeon, examined plaintiff in the context of her workers' compensation claim. [AR at 358-75.] Plaintiff presented to Dr. Ahmed complaining of neck pain that increased with flexion and extension, and constant lower back pain radiating down her right and left legs, which increased with prolonged standing, walking, sitting, flexion, extension, and lifting or carrying any weight. [AR at 360.] He noted plaintiff was taking medication for pain, inflammation, hypertension, and seizures. [Id.] Dr. Ahmed's examination revealed diffuse tenderness of the thoracic spine and slightly reduced flexion and extension; decreased flexion and extension of the lumbar spine; decreased straight leg raising results; decreased lumbar spine sensation at L4-S1; tightness and spasm paraspinal musculature; facet joint tenderness at L3-L5; and sacrum coccyx tenderness. [AR at 367-69.] Dr. Ahmed's review of a May 22, 2012, lumbar spine x-ray revealed "early discogenic disease and mild osteoarthritis involving the L5-S1 level." [AR at 371.] He noted that another x-ray of the lumbar spine revealed

"diffuse disk space narrowing of what would appear to be L5-S1 . . . [and] [t]here is anteverted coccyx, [but] no evidence of coccygeal fracture." [Id.] He diagnosed plaintiff with "[l]umbar [s]pine [s]prain/[s]train, Rule out Herniated Lumbar Disc and Radiculitis, Radiculopathy," "Coccydynia," "Seizure Disorder, Exacerbated by Chronic Pain," and "Cubitus-Varus Deformity Left Elbow, Secondary to Fracture." [AR at 372.] Dr. Ahmed found plaintiff to be "temporarily totally disabled from an orthopedic standpoint for six weeks," and observed that if plaintiff were to return to work, she would require accommodations: no lifting or carrying any items above 20 pounds; no repeated bending and stooping; no prolonged standing, walking or sitting for periods longer than 30 minutes at a time. [AR at 372-73.] Plaintiff notes -- and defendant does not dispute -- that at ten different visits between November 2012 and July 2014, Dr. Ahmed also noted reduced spinal range of motion [JS at 6 (citing AR at 354, 367, 415, 426, 568, 579, 584, 589, 592)]; objective findings that included tenderness with palpation to the lumber spine and muscle spasm [id. (citing AR at 415)]; positive straight leg raises [JS at 7 (citing AR at 354, 399)]; and objective findings at each of the ten visits "that support [Dr. Ahmed's September 2013] opinion" that plaintiff is limited in her ability to sit for more than two hours in an eight-hour workday. [Id. (citing AR at 422)]. Additionally, Dr. Ahmed's treatment recommendations included physiotherapy; a lumbar sacral orthosis brace; an interferential unit; consultation with a neurologist; and use of a doughnut pillow. [Id. (citing AR at 373).] He also prescribed Anaprox, Prilosec, Flexeril, Ultram, Norco, Gabapentin, "Lido keto" cream with Flexeril, and Flurbiprofen. [Id. (citing AR at 374).] The ALJ noted that Dr. Ahmed recommended epidural steroid injections. [AR at 27 (citing AR at 329-57, 415-30, 565-95).]

Plaintiff contends that Dr. Ahmed's opinions are supported by other medical sources in the record, including Rajiv Puri, M.D., who examined plaintiff on June 25, 2012, and gave her a cortisone injection in the coccyx area [JS at 7 (citing AR at 238, 377, 392)]; Mikel Alwis, M.D.,[5] who examined plaintiff in May 2012, and ordered a May 23, 2012, x-ray of plaintiff's lumbar spine that

---

[5] Plaintiff attributes the x-ray findings to Dr. Alwis, who was the physician who requested the x-ray examination. The report itself was actually prepared by Robert E. Young, M.D. [AR at 242.]

showed signs of early discogenic disease and mild osteoarthritis involving the L5-S1 level, one-millimeter diffuse disc bulging, and minimal facet hypertrophy with no significant central or foraminal narrowing [JS at 7 (citing AR at 240, 242)]; and Alexander Angerman, M.D., who in November 2013 found diffuse tenderness in the parspinal and trapezius musculature bilaterally, and in the medial scapular region, as well as reduced range of motion in the cervical and lumbosacral spine, positive straight leg raising in the sitting and supine positions, narrowing at the L5-S1 disc space, and lumbar bulging disc syndrome with lower extremity radiculopathy and history of coccyx fractures. [JS at 7-8 (citing AR at 390-413).] Dr. Angerman also opined that if plaintiff were to perform a job with prolonged sitting activity, her condition would worsen. [JS at 8 (citing AR at 408).]

The ALJ gave Dr. Ahmed's opinions "little weight":

> [A]s discussed below, the standard for review in a worker's compensation case is not the same as Social Security disability. A finding of disability under social security law is not consistent with the very benign clinical and diagnostic findings in [plaintiff's] records. Further, the objective clinical findings and relatively conservative treatment measures do not support allegations of disabling symptoms and limitations. At her initial evaluation on November 16, 2012, physical examination reportedly revealed decreased range of motion with positive straight leg raising and decreased sensation, but she had a normal gait pattern and aside from 4/5 muscle weakness in the bilateral feet dorsiflexor, left foot everters, and knee extensors, her muscle strength was normal. Dr. Ahmed prescribed medication and referred [plaintiff] for further diagnostic testing. An electrodiagnostic study on November 28, 2012 found only evidence of mild right L4-L5 radiculopathy. Further, a neurological and pain management consultation report on November 28, 2012 found normal gait and station, intact sensation, grossly intact muscle strength, and normal deep tendon reflexes. A December 17, 2012 lumbar spine MRI found mild disc desiccation at L3-L4 and L5-S1 with associated loss of disc height, causing only mild bilateral neural foraminal narrowing and mild spinal canal narrowing, and straightening of lumbar lordotic curvature, but otherwise normal findings. Dr. Ahmed continued to find decreased range of motion, straight leg raising, and tenderness to palpation at the sacroiliac joints with pain at the coccyx, leading to recommendation for epidural steroid injections. However, while pending approval for [epidural steroid] injections, [Dr. Ahmed] simply maintained routine medication treatment, which [plaintiff] said have [sic] been of benefit, and did not attempt any other treatment measures. The lack of more aggressive [treatment] for her allegedly disabling symptoms and limitations suggests her symptoms were not as severe as alleged.
>
> . . . .
>
> The term "temporarily totally disabled" (TTD) is used in workers' compensation law to indicate a worker is unable to work at a certain moment or period in time. The focus in a workers' compensation claim is on the claimant's past work or some modification thereof, but the criteria used to determine disability under the Social Security Act is different from worker's compensation laws. 20 CFR 404.1504 and

> 404.1527(e) allow outright rejection of conclusions of disability, which are based on criteria other than Social Security Regulations. . . . In addition, such disability statements are reserved to the Commissioner. . . .
>
> The undersigned has given little weight to the functional assessments of Dr. Ahmed. . . . The undersigned is aware that the workers' compensation system is adversarial. Often, the claimant's treating physician for workers' compensation purposes serves as an advocate for the claimant, and describes excessive limitations to enhance the claimant's financial recovery. The physicians used by either party in workers' compensation cases are often biased and do not provide truly objective opinions. The treating physician's disability finding is concerned with the ongoing workers' compensation claim and the ability to do prior work. The standard for review in a workers' compensation case is not the same as Social Security disability. Moreover, the course of treatment pursued by the doctor has not been consistent with what one would expect if the claimant were truly as disabled as the doctor has reported.

[AR at 26-29 (citations omitted).] Instead, the ALJ gave "great weight" to the April 2013 and September 2013 opinions of the State agency medical consultants who reviewed plaintiff's medical records. [AR at 30 (citing AR at 63-74, 76-90).] He stated that "[a]lthough these [State agency] consultants did not have benefit [sic] of considered [sic] the evidence added after their evaluation, the residual functional capacity assessed by [them] is reasonable and consistent with the objective medical evidence." [Id.]

### 1. Workers' Compensation Records

The ALJ discounted Dr. Ahmed's opinions because they were made in the workers' compensation context, and because "physicians used by either party in workers' compensation cases are often biased and do not provide truly objective opinions."

An ALJ "may not disregard a . . . medical opinion simply because it was initially elicited in a state workers' compensation proceeding . . . ." Booth v. Barnhart, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002). Instead, an ALJ must evaluate the medical records prepared in the context of workers' compensation in the same way he would evaluate records obtained otherwise. Id. (citing Coria v. Heckler, 750 F.2d 245, 248 (3d Cir. 1984)) ("[T]he ALJ should evaluate the objective medical findings set forth in the medical reports for submission with the workers' compensation claim by the same standards that s/he uses to evaluate medical findings in reports made in the first instance for the Social Security claim"). The ALJ is obliged to "translate" the workers' compensation findings into the applicable Social Security terminology "in order to accurately

assess the implications of those opinions for the Social Security disability determination." Id. (citing Desrosiers v. Sec'y of Health and Human Srvcs., 846 F.2d 573, 576 (9th Cir. 1988)). Although the "translation" need not be explicit, the decision "should at least indicate that the ALJ recognized the differences between the relevant state workers' compensation terminology, on the one hand, and the relevant Social Security disability terminology, on the other hand, and took those differences into account in evaluating the medical evidence." Id. Further, an ALJ is not entitled to reject a medical opinion based "on the purpose for which medical reports are obtained." Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1200 n.5 (9th Cir. 2004) (citing Lester, 81 F.3d at 830). Here, the ALJ did not provide any evidence that Dr. Ahmed or *any* of plaintiff's workers' compensation physicians was anything but an unbiased professional in conducting their examinations and writing their reports. It appears, therefore, that he improperly rejected those opinions based on the mere fact they were obtained for workers' compensation purposes.

Based on the foregoing, this was not a specific and legitimate reason for rejecting Dr. Ahmed's opinions.

### 2. The ALJ Failed to Consider the Appropriate Factors

As noted, the ALJ gave "great weight" to the April and September 2013 opinions of the State agency medical consultants. [AR at 30.] Although he acknowledged that non-examining medical sources are generally entitled to less weight, he observed that "in a particular case, depending on all the facts of that case," it is possible "to give greater weight to the opinion of a non-examining source" after considering multiple factors to determine the weight to give any medical source opinion, such as "testing and consultative evaluations by specialists; supportability, including the degree of explanation and support by objective evidence; consistency with the record as a whole; degree of specialization in the area of medicine involved; and other factors, including awareness of other evidence in the record, and understanding of social security disability programs and requirements." [AR at 30 (citations omitted).]

Defendant argues that the ALJ "reasonably gave the greatest weight to the physicians whose opinions were most consistent with Plaintiff's objective findings," i.e., the State agency

reviewing physicians Dr. Spinka and Dr. Lockie. [JS at 10.] She also argues that the ALJ gave valid reasons for discounting Dr. Ahmed's opinions, "citing Plaintiff's history of routine and conservative treatment" and "the fact that Dr. Ahmed's opinion was contradicted by other opinions [and] was inconsistent with the objective medical evidence." [Id.] Defendant notes that "in stark contrast to Dr. Ahmed, Drs. Spinka and Lockie reviewed the medical records and opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk six hours cumulatively, and sit for six hours in an 8-hour workday," which the ALJ found to be "reasonable and consistent with the objective medical evidence." [JS at 12 (citing AR at 30, 71-73, 86-87).]

It is not enough, however, for the ALJ to only pay lip service to the factors he is supposed to consider when determining -- as the ALJ did here -- that the non-examining physicians' opinions should be given more weight than the treating physicians' opinions. See Trevizo, 871 F.3d at 676. Indeed, despite acknowledging the factors that must be considered, it does not appear that the ALJ actually considered those factors. Thus, although he implied that Dr. Ahmed's opinions were inconsistent with "the very benign clinical and diagnostic findings" in the record, he never discussed the length of plaintiff's treating relationship with Dr. Ahmed, the frequency of examinations, the nature and extent of the treatment relationship, or the supportability of Dr. Ahemd's opinions, which "failure alone constitutes reversible legal error." Id. The record reflects, for instance, that Dr. Ahmed and Dr. Angerman are both orthopedic surgeons, while Dr. Lockie appears to be a pediatrician [see AR at 83 (noting George N. Lockie M.D., FAAP [Fellow of the American Academy of Pediatrics])], and Dr. Spinka does not indicate any area of specialization. [See AR at 74.] Dr. Ahmed treated plaintiff on numerous occasions between 2012 to 2014; ordered, conducted, and reviewed diagnostic and clinical testing that consistently reflected limitations in range of motion, positive straight leg raising, decreased sensation, increased tenderness, radiculopathy, and lumbar spine issues, among other things; prescribed significant medications to control plaintiff's pain; and ultimately recommended epidural steroid injections. Although the ALJ suggested that Dr. Ahmed "simply" maintained "routine" medication treatment while authorization for the epidural injections was pending without attempting any other treatment

measures, he did not suggest or point to any evidence in the record of any alternative treatment measures that would have been appropriate during that interim period. Additionally, notwithstanding the ALJ's characterization of Dr. Ahmed's findings as "*very* benign," and his treatment as "*relatively* conservative," and his attempt to characterize the December 17, 2012, lumbar spine MRI results (that showed "mild" dessication, and "only mild" bilateral foraminal narrowing, and "mild" spinal canal narrowing, and straightening of the lordotic curvature) as reflecting "otherwise normal findings," as the ALJ acknowledged, "Dr. Ahmed *continued to find* decreased range of motion, straight leg raising, and tenderness to palpation at the sacroiliac joints with pain at the coccyx, leading to recommendation for epidural steroid injections." [AR at 26-27 (emphasis added).] Thus, Dr. Ahmed's clinical observations appear to have been supported by the diagnostic test results. Similarly, to the extent the ALJ concluded that Dr. Ahmed's "course of treatment" of plaintiff was not consistent "with what one would expect if [plaintiff] were truly as disabled" as Dr. Ahmed reported, the ALJ did not point to any "course of treatment" beyond what plaintiff had received that would have been appropriate in her specific circumstances. As it was, Dr. Ahmed referred plaintiff to diagnostic testing and to a neurologist; recommended physiotherapy, a lumbar sacral brace, a doughnut pillow, and an interferential unit; and prescribed numerous medications including the opioid medication Norco. Other than surgery (something for which the ALJ points to no evidence that plaintiff is a candidate), it is difficult to fathom what additional appropriate treatment the ALJ "expected" to see implemented. Trevizo, 871 F.3d at 677 (holding that "the failure of a treating physician to recommend a more aggressive course of treatment, absent more, is not a legitimate reason to discount the physician's subsequent medical opinion about the extent of disability").

Based on the foregoing, the ALJ's reasons for rejecting Dr. Ahmed's opinions were not specific and legitimate and based on substantial evidence. Remand is warranted on this issue.

**C.     DR. ANGERMAN**

The ALJ noted that in the orthopedic agreed medical examiner's November 21, 2013, report [AR at 390-414], Dr. Angerman "opined [plaintiff] is restricted from very heavy lifting, repeated

13

bending and stooping, prolonged sitting, but then opined that [she] is not capable of performing her usual and customary job activities." [JS at 29 (citing AR at 408-09).] As he did with Dr. Ahmed, the ALJ gave Dr. Angerman's opinion "little weight" because Dr. Angerman assessed plaintiff under workers' compensation standards "and his opinion of [her] inability to perform her past relevant work is not based upon vocational expertise, as relied upon in this decision." [Id.] For the same reasons discussed above with respect to Dr. Ahmed's opinions, the ALJ's reliance on Dr. Angerman's status as a workers' compensation physician to discount his opinions fares no better.

The ALJ also stated that Dr. Angerman "did not provide specific lifting or sitting limitations and as a one-time examination, he did not have the opportunity to obtain a longitudinal picture of [plaintiff's] medical condition[.]" [Id.] The Court notes, however, that contrary to the ALJ's finding that Dr. Angerman did not have a "longitudinal" picture of plaintiff's condition, Dr. Angerman reviewed a 1.5 inch stack of plaintiff's medical records dating between February 2012 and April 2013. [AR at 400-04.] As the State agency physicians generated their reports in April and September 2013, it appears that they reviewed much the same records as those reviewed by Dr. Angerman [compare AR at 64-67, 78-83 with AR at 400-04] and -- unlike the State agency physicians -- in addition to reviewing the medical records, Dr. Angerman actually conducted a physical examination of plaintiff. [AR at 397-400.] Furthermore, Dr. Angerman's use of the terms "very heavy," "prolonged" and "repeated," while not specific, were nevertheless otherwise made clear by his opinion that plaintiff is not capable of performing her "usual and customary job activities," which he had described in his report as sitting for 90% of a work shift; standing and walking 10% of a work shift; frequent bending, stooping and twisting; occasional lifting and carrying up to 40-50 pounds; occasional overhead reaching; and kneeling, crouching, crawling, and heavy pushing and pulling only once or twice a year when she needed to rotate the cabinets as part of her duties. [AR at 394.] While he may or may not have "vocational expertise," there was no evidence that Dr. Angerman, an orthopedic surgeon, was not qualified to determine whether plaintiff could perform her "usual and customary job activities" as she described them given her impairments and limitations as found by Dr. Angerman based on and supported by the

clinical and diagnostic testing of record. [See AR at 407, 408 (Dr. Angerman noted that his opinions regarding plaintiff's work restrictions were based on plaintiff's "persistent symptomatology," his own examination of her, and the diagnostic and clinical evidence of record with respect to her cervical and lumbosacral spine). Accordingly, the ALJ did not provide specific and legitimate reasons supported by substantial evidence for discounting Dr. Angerman's opinions in favor of the non-examining State agency reviewers' opinions.

Based on the foregoing, remand is warranted on this issue.

## VI.

## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Lingenfelter v. Astrue, 504 F.3d 1028, 1041 (9th Cir. 2007); Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ failed to provide specific and legitimate reasons for discounting the opinions of treating physicians Dr. Ahmed and Dr. Angerman, the ALJ on remand shall reassess the medical evidence. In assessing all of the medical opinion evidence, the ALJ must explain the weight afforded to each opinion and provide legally adequate reasons for any portion of the opinion that the ALJ discounts or rejects, including a legally sufficient explanation

for crediting one doctor's opinion over any of the others.[6]  If warranted, the ALJ on remand, in accordance with SSR 16-3p and in light of the ALJ's assessment of the medical opinions, shall then reassess plaintiff's subjective allegations and either credit her testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony.  Based on his reevaluation of the entire medical record, and assessment of plaintiff's subjective symptom testimony, the ALJ shall then determine plaintiff's RFC.  Finally, the ALJ shall proceed through step four and, if warranted, step five to determine, with the assistance of a VE if necessary, whether plaintiff can perform her past relevant work or any other work existing in significant numbers in the regional and national economies.  See Shaibi v. Berryhill, 870 F.3d 874, 882-83 (9th Cir. 2017).

/
/
/
/
/
/
/
/
/
/
/

---

[6]  The Court notes that for all claims filed on or after March 27, 2017, the Rules in 20 C.F.R. § 404.1520c (not § 404.1527) shall apply.  The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c.  Thus, the new regulations eliminate the term "treating source," as well as what is customarily known as the treating source or treating physician rule.  See 20 C.F.R. § 404.1520c; see also 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016).  However, the claim in the present case was filed before March 27, 2017, and the Court therefore analyzed plaintiff's claim pursuant to the treating source rule set out herein.  See also 20 C.F.R. § 404.1527 (the evaluation of opinion evidence for claims filed prior to March 27, 2017).

## VII.

## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: November  1 , 2017

*Paul L. Abrams*
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE